**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MAXINE BONAPARTE,<br><br>Debtor. | FOR PUBLICATION<br><br>Chapter 13<br><br>Case No. 25-12005 (JPM) |

*APPEARANCES*

THE WILSON LAW FIRM LLC
*Counsel for the Debtor*
225 Livingston Street, 4th Floor
Brooklyn, NY 11217
By: Earl Antonio Wilson

ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS PLLC
*Counsel for Secured Creditor Deutsche Bank*
900 Merchants Concourse, Suite 310
Westbury, NY 11590
By: Kevin R. Toole

CHAPTER 13 TRUSTEE
*Standing Chapter 13 Trustee*
399 Knollwood Rd., Suite 102
White Plains, NY 10603
By: Rebecca Anne Richards

UNITED STATES TRUSTEE
*Office of the U.S. Trustee, Region 2*
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004

### MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS AND DENYING REMAINING MOTIONS AS MOOT

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I.      INTRODUCTION

This matter arises from the Chapter 13 case of Maxine Bonaparte (the "**Debtor**").  Before

the Court are three motions:

(1)   the motion of creditor Deutsche Bank National Trust Company ("**Deutsche Bank**") seeking relief from the automatic stay to permit foreclosure of the Debtor's property located at 253 West 136 Street, New York (the "**Property**"), dated January 29, 2026 (the "**Stay Relief Motion**") (Dkt. No. 22);

(2)   the motion of the Chapter 13 Trustee (the "**Trustee**") seeking dismissal of this case pursuant to 11 U.S.C. § 1307, dated February 24, 2026 (the "**Motion to Dismiss**") (Dkt. No. 24); and

(3)   the Debtor's motion for entry of an order authorizing short sale of the Property under 11 U.S.C. § 363(f), dated March 27, 2026 (the "**Short Sale Motion**") (Dkt. No. 29).

On April 16, 2026, Deutsche Bank filed a response opposing the Short Sale Motion,

arguing that the sale of the Property under § 363(f) is unwarranted because the Debtor's proposed

short sale agreement expired on June 2, 2025, and no new agreement has been submitted for the

Court's approval (the "**Response**").  (Dkt. No. 32).  On April 22, 2026, the Debtor filed a reply

(the "**Reply**"), contending that the original short sale failed because clerical errors outside her

control caused the letter of undertaking to misidentify the mortgagee, preventing title insurance

from being issued.  (Dkt. No. 33).  The Debtor further argues that Deutsche Bank "should not

benefit from its own error" related to the letter of undertaking.  (*Id.*).

On April 23, 2026, the Court held a hearing to consider all three motions (the "**Hearing**").

At the Hearing, the Trustee argued that dismissal is warranted because, inter alia, the Debtor

exceeds the statutory debt limit set forth by 11 U.S.C. § 109(e) and is therefore ineligible for

Chapter 13 relief.  (*See* Apr. 23, 2026 Hearing).  The Debtor responded that dismissal would be

inequitable in light of the pending short sale, and asserted that the Court has discretion under 11

U.S.C. § 105(a) to take action "necessary or appropriate" to preserve estate value notwithstanding the debt limit. (*Id.*). The Debtor did not respond to the Stay Relief Motion. (*Id.*).

Having reviewed the parties' filings, the arguments presented at the Hearing, and the record as a whole, the Court finds that the Debtor is ineligible for Chapter 13 relief under § 109(e) and that dismissal is therefore warranted under § 1307. For the reasons set forth below, the Motion to Dismiss is **GRANTED**. Because dismissal terminates the automatic stay and removes the Property from the bankruptcy estate, the Stay Relief Motion and the Short Sale Motion are **DENIED AS MOOT**.

## II.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), 157(b), and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), and (N).

## III.   BACKGROUND

The Debtor is a repeat filer, having commenced six prior bankruptcy cases between 2004 and 2023. Each case sought relief under Chapter 13. The Debtor's first three cases were filed in this Court in 2004 and 2005 and closed within the same year of filing. (*See* Case Nos. 04-40236 (CB), 04-41797 (CB), and 05-41158 (RDD)). Since May 3, 2007, the Property has been the subject of a foreclosure action commenced by Deutsche Bank in the New York State Supreme Court, New York County. (Dkt. No. 29).

The Debtor filed her fourth Chapter 13 case on October 22, 2018. (*See* Case No. 18-13178 (CGM)). That case was dismissed on May 23, 2019 pursuant to 11 U.S.C. § 1307(c) for failure to make plan payments. (*Id.*). Before the fourth case was closed, on May 9, 2019, she filed her fifth

3

case in the United States Bankruptcy Court for the Eastern District of New York, which case was dismissed on July 30, 2019 for filing deficiencies. (*See* Case No. 19-42890 (CEC)).

On July 10, 2023, the Debtor filed her sixth Chapter 13 case. That case was automatically dismissed on September 18, 2023, under 11 U.S.C. § 521(i), for failure to file basic Chapter 13 disclosures and required documents. (*See* Case No. 23-11081 (CGM)).

On or about May 20, 2024, the Debtor began marketing the Property for sale through Prudent Choice Realty, with the assistance of mortgage servicer Select Portfolio Servicing, Inc. ("**SPS**"). (Dkt. No. 29). In April 2025, the realtor identified 253-136 Enterprises Holdings Corp. as a potential buyer, for a proposed sale price of $800,000.00 with a minimum lender recovery of $792,550.00. (*Id.*). The offer expired on June 2, 2025. (*Id.*). The Debtor attests that she provided all required documentation to close the transaction. (*Id.*). According to the Debtor, however, clerical errors outside her control caused the letter of undertaking to misidentify the mortgagee, which prevented title insurance from being issued for the Property, a condition precedent to closing. (*Id.*). The Debtor subsequently sought a renewed short-sale approval with SPS, but SPS denied the application on June 20, 2025. (*Id.*). After the sale failed to close, Deutsche Bank resumed foreclosure proceedings. (*Id.*).

On September 15, 2025, the Debtor filed the seventh and instant Chapter 13 case. (Dkt. No. 1). The claims register and the Debtor's schedules reflect that the Debtor's principal secured obligation is a mortgage loan held by Deutsche Bank in the amount of $2,855,860.99, consisting of $1,312,500.00 in principal, $1,063,144.88 in interest, $402,249.88 in taxes and insurance, and $115.75 in late fees. (*See* Proof of Claim No. 4; *see also* Dkt. No. 22). Additional claims were filed by Capital One, N.A., Santander Bank, N.A., and LVNV Funding LLC. (*See* Proof of Claim

4

Nos. 1-3). In total, the Debtor reports secured debt of $2,859,610.99 and unsecured debt of $127,117.00, for aggregate indebtedness of approximately $2,986,727.99.

The Debtor's Schedule A/B values the Property at approximately $750,000.00. (Dkt. No. 10). Deutsche Bank values the Property at $995,000.00. (Dkt. No. 22). Under either valuation, the Property is worth substantially less than the outstanding mortgage debt.

On January 29, 2026, Deutsche Bank filed the Stay Relief Motion. (Dkt. No. 22). Deutsche Bank asserts that its lien is not adequately protected because the Debtor is in default under the mortgage, with total prepetition indebtedness of $2,868,625.26. (*Id*.). The Bank further assets that, as of December 17, 2025, post-petition arrears totaled $22,690.89. (*Id*.). According to Deutsche Bank, the total mortgage debt, including a principal balance of $1,312,500.00, substantially exceeds both the Debtor's stated value of the Property ($750,000) and the proposed short sale price of $800,000, leaving no meaningful equity cushion. (*Id*.).

On February 24, 2026, the Trustee filed the Motion to Dismiss, asserting that the Debtor exceeds the debt limits set forth in 11 U.S.C. § 109(e) and is therefore ineligible for Chapter 13 relief. (Dkt. No. 24). The Trustee also alleged that the Debtor failed to comply with certain basic Chapter 13 obligations, including attending the § 341 meeting of creditors, making timely plan payments, submitting proofs of income, certifying completion of an instructional course on personal financial management and satisfaction of domestic support obligations, and providing tax returns for the 2021, 2022, 2023, and 2024 tax years. (*Id*.).

On March 27, 2026, the Debtor filed the Short Sale Motion seeking court approval to sell the Property pursuant to § 363(f). (Dkt. No. 29). On April 16, 2026, Deutsche Bank opposed the Shrot Sale Motion, noting that the short sale approval attached to the Debtor's submission was dated April 10, 2025 and had expired on June 2, 2025, prior to the filing of the motion. (Dkt. No.

5

32).  Deutsche Bank further argues that, while it does not object to a sale for less than the outstanding mortgage balance, it contends that the Debtor should surrender the Property and permit foreclosure to proceed under applicable state law.  (*Id*.).

On April 22, 2026, the Debtor filed the Reply.  (Dkt. No. 33).  The Debtor argues that the proposed short sale failed to close for reasons beyond her control, and that it would be inequitable to permit Deutsche Bank to resume foreclosure after she obtained a bona fide purchaser of the Property.  (Id.).  The Debtor further contends that a sale at $800,000.00 would guarantee Deutsche Bank a recovery of at least $792,550.00, whereas foreclosure would likely yield less because it would be costly and time-consuming and would "risk [further] deterioration" of the Property.  (*Id*.).

## IV.    LEGAL STANDARD

### A.  The § 109(e) Debt Limit

Eligibility for Chapter 13 relief "is subject to a debt cap."  *In re Zhang Med. P.C.*, 655 B.R. 403, 408 (Bankr. S.D.N.Y. 2023).  That cap is set forth in § 109(e) of the Bankruptcy Code:

> Only an individual with regular income that owes, on the date of filing of the petition, noncontingent, liquidated, unsecured debts of less than $526,700 and noncontingent, liquidated, secured debts of less than $1,580,700, or an individual with regular income and such individual's spouse, except a stockbroker or commodity broker, that owe, on the date of filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $526,700 and noncontingent, liquidated, secured debts of less than $1,580,700 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e).

It is well-established that an individual whose debts exceed the statutory cap is ineligible for Chapter 13 relief.  *See, e.g.*, *In re Greene*, 57 B.R. 272, 276 (Bankr. S.D.N.Y. 1986); *In re Massie*, No. 19-51593, 2020 WL 2500623, at *5 (Bankr. D. Conn. May 14, 2020) (holding that the debtor is ineligible for Chapter 13 relief "because his secured debts exceed[ed] the statutory maximum"); *In re Crescenzi*, 53 B.R. 374, 377 (Bankr. S.D.N.Y. 1985), *aff'd*, 69 B.R. 64

6

(S.D.N.Y. 1986) (holding that "the debtor is ineligible for Chapter 13" relief when his total debts "exceed[ed] the stated dollar amounts of Code § 109(e)").

Courts are divided, however, on whether the § 109(e) debt limit is jurisdictional. Some courts have treated the debt cap as jurisdictional and non-waivable, such that a debtor's failure to satisfy § 109(e) requires dismissal for lack of jurisdiction. *See, e.g.*, *In re Walls*, 496 B.R. 818, 824 (Bankr. N.D. Miss. 2013); *In re Kelsey*, 6 B.R. 114, 117 (Bankr. S.D. Tex. 1980) (holding that the "debt limit in § 109(e) appears to be jurisdictional and cannot be waived"). Other courts have held that § 109(e) merely defines eligibility for Chapter 13 relief, but does not deprive the court of jurisdiction or render the case "a nullity" or "void ab initio" if the debt limits are exceeded. *In re Ross*, 338 B.R. 134, 136 (Bankr. N.D. Ga. 2006); *In re Seaman*, 340 B.R. 698, 707 (Bankr. E.D.N.Y. 2006) (holding that "a petitioner's eligibility to be a debtor under § 109 is not jurisdictional"); *In re First Assured Warranty Corp.*, 383 B.R. 502, 518 (Bankr. D. Colo. 2007) (noting that "§ 109 is not jurisdictional").

The Second Circuit has not resolved that issue. In *Zarnel*, the Second Circuit noted that § 109 is not "meant to restrict the [bankruptcy court's] jurisdiction granted under 28 U.S.C. §§ 1334, 157," without deciding whether a debtor's ineligibility under § 109(e) divests the court of jurisdiction. *In re Zarnel*, 619 F.3d 156, 169 (2d Cir. 2010) (citing *Rudd v. Laughlin*, 866 F.2d 1040, 1042 (8th Cir.1989)). Although *Zarnel* did not address the debt cap, its reasoning counsels against treating § 109's eligibility requirement as a jurisdictional limitation. *See id.*

Consistent with *Zarnel*, courts in this District have treated other eligibility requirements—such as § 109(g) and § 109(h)—as non-jurisdictional. *See, e.g.*, *In re Covelli*, 550 B.R. 256, 265 (Bankr. S.D.N.Y. 2016) (holding that § 109(g) is not jurisdictional and that eligibility requirements concern entitlement to relief, rather than a debtor's "eligib[ility] to file a petition in the first place");

7

*In re Osborne*, 490 B.R. 75, 80 (Bankr. S.D.N.Y. 2013) (holding that the credit counseling requirement under § 109(h) is "a matter of eligibility rather than jurisdiction"). In *Covelli*, the court rejected the argument that §109(g) imposed a jurisdictional bar, explaining that "the filing of the petition commences the bankruptcy case regardless of whether the debtor is technically eligible for relief under a particular chapter." *Covelli*, 550 B.R. at 265. Because a bankruptcy court has "the sole and exclusive responsibility" to determine eligibility and may, where appropriate, convert the case to a different chapter under which the debtor is eligible, ineligibility under a particular chapter does not divest the court of jurisdiction. *Id*. 264-65.

That reasoning applies with equal force to § 109(e). A debtor who exceeds the § 109(e) debt limit is ineligible for Chapter 13 relief, but that ineligibility does not strip the Court of jurisdiction to determine whether the debtor is eligible under Chapter 7 or 11. *See, e.g.*, *Greene*, 57 B.R. at 276 (noting that a debtor who is ineligible for Chapter 13 relief may be "eligible to file petitions under Chapter 11"); *In re Moore*, No. 19-51257 (JAM), 2020 WL 1207911, at *1 (Bankr. D. Conn. Mar. 10, 2020) ("[I]f the court finds the debtor to be ineligible for chapter 13, the court has discretion either to dismiss or to convert the case, depending on the best interests of the creditors and the estate."); *In re Toronto*, 165 B.R. 746, 756 (Bankr. D. Conn. 1994) (holding that "a court retains jurisdiction to convert a chapter 13 case to a chapter 7 case upon a determination that the debtors are not eligible for chapter 13 relief").

Thus, although the jurisdictional nature of § 109(e) remains unsettled, the Court concludes that the debt limit in § 109(e) does not strip this Court of discretion to determine whether to dismiss or convert the case to one under a different chapter. As such, the relevant question is whether the Debtor's failure to satisfy the § 109(e) debt limit constitutes "cause" for dismissal or conversion under § 1307(c).

8

**B. Dismissal or Conversion Under § 1307(c)**

Section 1307(c) provides that, "on request of a party in interest or the United States trustee and after notice and a hearing," a bankruptcy court may dismiss a Chapter 13 case or convert it to Chapter 7 "for cause," whichever is "in the best interest of the creditors and the estate." 11 U.S.C. § 1307(c). The statute enumerates eleven circumstances constituting cause. *In re Ciarcia*, 578 B.R. 495, 499 (Bankr. D. Conn. 2017) (citing 11 U.S.C. § 1307(c)). Because the statutory list is illustrative rather than exhaustive, courts may consider grounds for dismissal or conversion not expressly enumerated in § 1307(c). *See In re Brody*, 671 B.R. 34, 40 (Bankr. S.D.N.Y. 2025) (noting that the grounds enumerated in §§ 1307(c)(1) through (11) are "not exhaustive"). Determining whether cause exists is committed to the bankruptcy court's discretion. *See In re Burgos*, 476 B.R. 107, 111 (Bankr. S.D.N.Y. 2012).

Although § 1307(c) does not expressly identify ineligibility under § 109(e) as cause, courts have consistently held that a debtor's failure to satisfy Chapter 13 eligibility requirements may constitute cause for dismissal or conversion. *See, e.g.*, *In re Villaverde*, 540 B.R. 431, 433 (Bankr. C.D. Cal. 2015) (citing *Smith v. Rojas (In re Smith)*, 435 B.R. 637, 649 (B.A.P. 9th Cir. 2010)) (affirming dismissal of chapter 13 case due to the debtor exceeding the § 109(e) debt limit). That result follows from the structure of the Code: if a debtor is not eligible to be a debtor under Chapter 13, the case cannot proceed absent conversion to another chapter for which the debtor is eligible, and which serves the interests of creditors and the estate. *See, e.g.*, *In re Tashman*, 13 B.R. 549, 551 (Bankr. D. Vt. 1981) (holding that, where a debtor is ineligible for Chapter 13 relief, the debtor could "convert [it] to Chapter 11"); *In re Hagerstown Fiber Ltd. P'ship*, 226 B.R. 353, 359 (Bankr. S.D.N.Y. 1998) ("A debtor's ineligibility for relief under one chapter does not deprive the

9

bankruptcy court of jurisdiction over the case or prevent it from converting the case to a chapter under which the debtor can proceed.").

Courts therefore routinely dismiss Chapter 13 cases where a debtor exceeds the § 109(e) debt cap. *See, e.g.*, *In re Vinieris*, 391 B.R. 707, 714 (Bankr. S.D.N.Y. 2008) (dismissing the case where the debtor "has exceeded the debt limit set forth in 11 U.S.C. § 109(e) and is [thus] not a proper chapter 13 debtor"); *In re Ehrlich*, 675 B.R. 441, 445 (Bankr. S.D.N.Y. 2026) ("Exceeding the debt cap in § 109(e) is a basis to grant a motion to dismiss against the Debtor."). Thus, when a Chapter 13 debtor's noncontingent, liquidated debts exceed the limits set by § 109(e), that ineligibility establishes cause under § 1307(c). The court must then determine whether dismissal or conversion is in the best interests of creditors and the estate.

## V.    ANALYSIS

### A. The Debtor Exceeded the § 109(e) Debt Limit

As a threshold matter, the Court finds that the Debtor is ineligible for Chapter 13 relief. The Debtor's schedules and the claims register reflect aggregate indebtedness of approximately $2,986,727.99, including secured debt of $2,859,610.99 and unsecured debt of $127,117.00. (Dkt. No. 22). The secured debt alone far exceeds the $1,580,700 statutory limit set forth in § 109(e). As the Trustee argued at the Hearing, the Debtor's ineligibility cannot be cured within Chapter 13; the case must either be dismissed or converted to a chapter under which the Debtor is eligible. (*See* Apr. 23, 2026 Hearing).

The Debtor does not dispute that she exceeded the § 109(e) debt limit, nor does she contend that any portion of her debt is contingent or unliquidated. (Dkt. No. 33). Instead, she invokes the Court's equitable authority under § 105(a), arguing that the Court may take any actions to "prevent injustice" and "preserve estate value," especially when a short sale is underway. (*Id.*). Relying on

*In re Beker Industries Corp.*, 63 B.R. 474, 477 (Bankr. S.D.N.Y. 1986), the Debtor argues that the Bankruptcy Code permits the Court to "preserve value and prevent actions that would undermine a viable solution," notwithstanding her apparent ineligibility for Chapter 13 relief under § 109(e). (Dkt. No. 33).

The Court is unpersuaded. "Section 105(a) authorizes bankruptcy courts to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." *See In re Pan Am Corp.*, 162 B.R. 667, 671 (S.D.N.Y. 1993) (citing 11 U.S.C. § 105(a)). It does not permit the Court to disregard express statutory eligibility requirements. *See In re Aeropostale, Inc.*, 555 B.R. 369, 399 (Bankr. S.D.N.Y. 2016) (holding that "a bankruptcy court's equitable powers" under § 105(a) are "not boundless" and cannot be used "to disregard unambiguous statutory language of the Bankruptcy Code"). Nor does § 105(a) authorize relief that is inconsistent with the Code's substantive limitations. *See In re Procel*, 467 B.R. 297, 306 (S.D.N.Y. 2012) (holding that, "although § 105(a) grants a Bankruptcy Court broad powers, it does not authorize the Court to disregard the plain language" of other sections of the Code); *see also Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 216 n.2 (2024) (quoting *In re Purdue Pharma*, 69 F.4th 45, 73 (2d Cir. 2023)) (holding that "'§ 105(a) alone cannot justify' the imposition of nonconsensual third-party releases because [§ 105(a)] serves only to 'carry out' authorities expressly conferred elsewhere in the [C]ode"). Here, § 109(e) establishes who may be a debtor under Chapter 13. *See* 11 U.S.C. § 109(e). Because the Debtor's debts exceed those limits, she is not eligible to proceed under Chapter 13. Section 105(a) cannot be used to circumvent the § 109(e) eligibility requirement that Congress has expressly promulgated.

The Debtor's reliance on *Beker* is misplaced. The issue in *Beker* was a narrow question of statutory interpretation: whether "value" under § 363(f) referred to the actual value of the collateral

or the facial amount of the lien in the context of a Chapter 11 asset sale. *See Beker*, 63 B.R. at 476. That question is entirely different from the issue presented here. *Beker* arose under Chapter 11 and did not address a debtor's eligibility under § 109. Nor did *Beker* hold that § 105(a) permits a bankruptcy court to override statutory eligibility requirements. The Debtor cites *Beker* for the proposition that a court "may exercise its equitable powers to preserve value and prevent actions that would undermine a viable solution," but *Beker* contains no such holding and does not address § 105(a) or § 109(e). (Dkt. No. 33). Accordingly, *Beker* provides no basis for the Court to allow this Chapter 13 case to proceed when the record establishes that the Debtor is ineligible for Chapter 13 relief.

### B. Dismissal Is Warranted Under § 1307(c)

The Court further finds that the Debtor's ineligibility under § 109(e) constitutes cause for dismissal under § 1307(c). As set forth above, the Debtor's secured debt exceeds the statutory limits for Chapter 13 relief, and the Debtor has not disputed the amount, nature, or enforceability of those debts for purposes of § 109(e). Because the Debtor is not eligible to proceed under Chapter 13, this case cannot remain pending under that chapter. The Debtor's failure to satisfy § 109(e), standing alone, establishes cause for dismissal or conversion under § 1307(c). *See, e.g.*, *In re Lee*, No. 25-30738 (AMN), 2025 WL 4090483, at *3 (Bankr. D. Conn. Dec. 17, 2025) (holding that a debtor's failure to comply with § 109(e) "is an independent basis for dismissal of the case for cause"); *In re Wilson*, 9 B.R. 723, 725 (Bankr. E.D.N.Y. 1981) ("Failure to qualify within the definitive parameters of Section 109(e) constitutes sufficient cause for the dismissal or conversion of a case pursuant to Section 1307(c).").

Even if the debtor satisfies § 109(e), additional grounds support a finding of cause. According to the Trustee's Motion to Dismiss, the Debtor failed to comply with basic Chapter 13

12

obligations, including attending the § 341 meeting of creditors, making timely plan payments, submitting proof of income, certifying completion of the required personal financial management course and satisfaction of domestic support obligations, and providing tax returns for the 2021, 2022, 2023, and 2024 tax years. (Dkt. No. 24). Each of these deficiencies independently supports a finding of cause under § 1307(c). *See* 11 U.S.C. §§ 1307(c)(1), (3), (4), (10) and (11). To date, the Debtor has not cured all outstanding deficiencies. The Debtor does not meaningfully dispute those deficiencies, but instead argues that dismissal would be inequitable given the pending short sale. (Dkt. No. 33). That argument does not excuse the Debtor's statutory ineligibility or her failure to comply with basic Chapter 13 obligations.

The remaining question is whether dismissal or conversion is in the best interests of creditors and the estate. On this record, dismissal is appropriate. No party—including the Debtor—has moved to convert this case, and the record does not establish that conversion would produce a better result for creditors or the estate. The Debtor's schedules and Deutsche Bank's proof of claim show that the Property is substantially underwater under either valuation in the record. The Debtor values the Property at approximately $750,000.00, while Deutsche Bank values it at $995,000.00. (Dkt. Nos. 10, 22). Both figures are well below Deutsche Bank's asserted mortgage claim of $2,855,860.99. Thus, given the absence of equity in the Property, conversion would not serve the interests of creditors or the estate. *See, e.g.*, *In re Silverberg*, No. 8-25-73436 (LAS), 2026 WL 994441, at *9 (Bankr. E.D.N.Y. Apr. 13, 2026) ("[D]ismissal rather than conversion to Chapter 7 … was in the best interest of creditors and the estate because there would be no assets for a Chapter 7 trustee to administer as there was no equity in the Property.").

Nor does the Short Sale Motion justify conversion. The proposed short sale is based on an approval that expired on June 2, 2025, before this Chapter 13 case was filed. (Dkt. No. 32). The

13

Debtor has not submitted a current short-sale approval or binding sale agreement that the Court could approve. The short-sale approval letter attached to the Short Sale Motion as Exhibit A required all documentations and funds to be delivered to SPS by the June 2, 2025 closing deadline, which the Debtor failed to do. (*Id*. Exhibit A). Although the Debtor contends that a sale at $800,000.00 would provide a better recovery to Deutsche Bank than foreclosure, that contention is speculative. Deutsche Bank opposes the Short Sale Motion and seeks relief from the automatic stay to resume foreclosure under applicable state law. (Dkt. No. 22). The Court need not determine whether foreclosure will yield more than the proposed sale. It suffices that the Debtor is ineligible for Chapter 13 relief, has not cured the deficiencies identified by the Trustee, and has not shown that conversion would otherwise preserve value for creditors or the estate.

Accordingly, the Court concludes that cause exists under § 1307(c), and that dismissal, rather than conversion, is in the best interests of creditors and the estate.

### C. The Requests for Stay Relief and Short Sale Are Moot

The Court next turns to the Stay Relief Motion and Short Sale Motion.

Under § 362(d)(1), relief from the automatic stay may be granted "for cause," such as where a creditor's interest in the debtor's property is not adequately protected. *In re Benton*, 662 B.R. 517, 521 (Bankr. S.D.N.Y. 2024) (citing 11 U.S.C. § 362(d)(1))). "A debtor's failure to make required post-petition payments—whether mortgage payments or rent—can constitute 'cause' to lift the stay and is 'one of the best examples of a 'lack of adequate protection' under section 362(d)(1)." *In re Moche*, No. 25-11831 (JPM), 2026 WL 657433, at *13 (Bankr. S.D.N.Y. Mar. 9, 2026); *see also In re Taylor*, 151 B.R. 646, 648 (E.D.N.Y. 1993) ("[A] debtor's failure to make regular mortgage payments as they become due constitutes sufficient 'cause' to lift the automatic stay."); *In re Tihi Rest. Corp.*, No. 22-11216 (JPM), 2023 WL 1768373, at *2 (Bankr. S.D.N.Y.

14

2023) (recognizing that "the right to timely payment of rents constitutes an interest in property entitled to adequate protection," and the court may lift the stay for the failure to pay post-petition rent). Courts have also found inadequate protection where the equity cushion in the property is insufficient or nonexistent. *See In re Boodrow*, 126 F.2d 43, 53 (2d Cir. 1997); *see also In re Indian Palms Assocs., Ltd*., 61 F.3d 197, 207 (3d Cir. 1995) (finding adequate protection where the "value of the collateral available to the creditor exceeds by a comfortable margin the amount of the creditor's claim").

Here, Deutsche Bank has sufficiently shown mortgage indebtedness of $2,868,625.26 and post-petition arrears of $22,690.89. (Dkt. No. 22). Given the Debtor's valuation of the Property at $750,000, those amounts establish the absence of any meaningful equity cushion. (Dkt. No. 10). The Debtor has not disputed those facts. Absent contrary evidence, those circumstances would ordinarily constitute "cause" for lifting the stay under § 362(d)(1).

However, because this case is subject to dismissal under § 1307(c), Deutsche Bank's request for stay relief is moot. Upon dismissal, the automatic stay imposed by § 362(a) terminates by operation of law. *See In re Locascio*, 481 B.R. 285, 288 (Bankr. S.D.N.Y. 2012) ("Section 362(c)(2)(B) provides that the automatic stay created by section 362(a) terminates upon the dismissal of the case."). Dismissal "returns to creditors their non-bankruptcy procedural and substantive rights under state law." *In re New York City Off-Track Betting Corp*., No. 09-17121 (MG), 2011 WL 309594, at *3 (Bankr. S.D.N.Y. 2011). Deutsche Bank is thus free to proceed with foreclosure to enforce its rights under the mortgage.

Dismissal also renders the Short Sale Motion moot. Upon dismissal, the bankruptcy estate ceases to exist, and there is no longer any property of the estate. *See Crawford v. Franklin Credit Mgmt. Corp*., 758 F.3d 473, 485 (2d Cir. 2014) ("Since the dismissal undoes the bankruptcy case,

15

there is, upon dismissal, no longer any bankruptcy estate; and hence, there is no longer any property of the estate.").  Because § 363 authorizes a sale only of "the property of the estate," there is no estate property for the Court to authorize the Debtor to sell once the case is dismissed. Accordingly, both the Stay Relief Motion and the Short Sale Motion are denied as moot.

## VI.   CONCLUSION

For the foregoing reasons, the Court concludes that the Debtor is not eligible as a Chapter 13 debtor because the Debtor exceeds the § 109(e) debt cap.  The Court also finds that cause exists for dismissal under § 1307(c).  Accordingly, it is hereby ordered that:

1.   The Trustee's Motion to Dismiss is **GRANTED**.

2.   Deutsche Bank's Stay Relief Motion is **DENIED AS MOOT**.

3.   The Debtor's Short Sale Motion is **DENIED AS MOOT**.

   **IT IS SO ORDERED**.

Dated: May 5, 2026
      New York, New York                    /s/ John P. Mastando III
                                         HONORABLE JOHN P. MASTANDO III
                                         UNITED STATES BANKRUPTCY JUDGE